# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: ) | |
| ) | **JUDGE RICHARD L. SPEER** |
| Michael Alan and Dana Marie Finnegan ) | |
| ) | Case No. 08-3341 |
| Debtor(s) ) | |
| ) | (Related Case: 08-33529) |
| Tonya R. Wilhelm ) | |
| ) | |
| Plaintiff(s) ) | |
| ) | |
| v. ) | |
| ) | |
| Michael Alan Finnegan ) | |
| ) | |
| Defendant(s) ) | |

### DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine Dischargeability. The Plaintiff's Complaint is brought pursuant to the statutory exception to dischargeability set forth in 11 U.S.C. § 523(a)(2)(A). At the Trial, the Parties were given the opportunity to present evidence and make arguments that they wished the Court to consider in reaching its decision.

At the conclusion of the Trial, this Court deferred ruling on the matter so as to afford the opportunity to thoroughly review the evidence presented, the arguments of the Parties, as well as the entire record in this case. Based upon that review, and for the following reasons, this Court finds the Plaintiff's Complaint to have merit. With respect to this ruling, the succeeding discussion shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

Tonya R. Wilhelm v. Michael Alan Finnegan
Case No. 08-3341

## BACKGROUND

In January of 2007, the Plaintiff, Tonya Wilhelm (hereinafter the "Plaintiff"), and the Defendant, Michael Alan Finnegan (hereinafter the "Defendant"), entered into a business relationship involving the rehabilitation of real property. A business entity, WF Properties, LLC, was formed for this purpose. The business relationship contemplated 'house flipping' whereby the Parties would purchase properties, make improvements to the properties and then sell the properties for a profit. In this business relationship, the Plaintiff was to provide the working capital; the Defendant, in return, would provide the 'sweat equity' by finding suitable properties for purchase and then managing the properties' rehabilitation.

Between January 2007 and June of 2007, the Defendant executed in favor of the Plaintiff nine promissory notes. The total consideration extend on these notes was $136,000.00. With this consideration, six properties were to be rehabilitated by the Defendant.

The notes executed by the Defendant contained handwritten language by the Defendant indicating that the consideration extended by the Plaintiff was to be used "for the rehabilitation of property" located at six different addresses in Northwest Ohio. Each of the note's handwritten language also sets forth that the amount due on the notes would be repaid upon sale of the property, with an additional payment of either 25% or 50% of the property's sale price. The Defendant signed each of the promissory notes.

Ultimately, the Defendant did not perform his contractual obligations, with only some minor payments made to the Plaintiff. Similarly, with the exception of some minor improvements, the Defendant did not use the consideration extended by the Plaintiff for the rehabilitation of the properties set forth in the promissory notes. Instead, bank records submitted into evidence show that the consideration was dissipated by the Defendant largely for personal expenses, including but not

Page 2

limited to the following: personal mortgage payments; car payments, including that for a Cadillac, for the Defendant and his wife; professional sporting events; country club dues; golfing fees; payments to friends; cable television; and educational expenses for a child of the Defendant.

On July 7, 2008, the Defendant filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. In his bankruptcy filing, the Defendant disclosed an ownership interest in only two of the six properties which were to have been rehabilitated. On November 1, 2008, the Plaintiff commenced this action, seeking a determination that the consideration extended to the Defendant constituted a nondishargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A).

## DISCUSSION

Before this Court is the Plaintiff's Complaint to Determine Dischargeability of Debt. Proceedings brought to determine the dischargeability of particular debts are deemed core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court has the jurisdictional authority to enter final orders and judgments in this matter. 28 U.S.C. § 1334.

The Plaintiff's Complaint to determine dischargeability is brought pursuant to § 523(a)(2)(A) of the Bankruptcy Code. This section operates so as to except from discharge any debt which arises from a debtor's dishonest conduct, thereby implementing a fundamental bankruptcy policy that only those debts which are honestly incurred may be discharged. *EDM Machine Sales, Inc. v. Kay Harrison (In re Harrison)*, 301 B.R. 849, 853 (Bankr. N.D.Ohio 2003). Section 523(a)(2)(A) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

Page 3

Tonya R. Wilhelm v. Michael Alan Finnegan
Case No. 08-3341

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

Yet, to also ensure that the Congressional policy in favor of providing a debtor with a fresh-start is furthered, exceptions to dischargeability, including that brought under 523(a)(2)(A), are narrowly construed. *Ewing v. Bissonnette (In re Bissonnette)*, 398 B.R. 189, 193 (Bankr. N.D.Ohio.2008). Consistent with this, the party seeking to have a debt held nondischargeable bears the overall burden of persuasion to establish the applicability of the asserted statutory exception to discharge. *Brandenberger v. Chinnery (In re Chinnery)*, 196 B.R. 836, 837 (Bankr.W.D.Mo.1996). For this purpose, a preponderance of the evidence standard is applied. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

In order to sustain a cause of action under § 523(a)(2)(A), the moving party must establish the existence of the five common law elements of fraud. *Chase Manhattan Bank v. Alnajjar, (In re Alnajjar)*, 276 B.R. 844, 848 (Bankr. N.D.Ohio 2002). These elements are: (1) the debtor made a false representation; (2) the debtor knew such representation to be false at the time they were made; (3) the representation was made with intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor's loss was the proximate result of the misrepresentation having been made. *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D.Ohio 2001). As is common, only the middle three elements are disputed in this case: whether the Defendant, knowing his representations to be false, acted with the requisite intent to defraud and whether the Plaintiff was justified in relying on the Defendant's representations.

Page 4

Tonya R. Wilhelm v. Michael Alan Finnegan
Case No. 08-3341

On the first issue, an intent to defraud under § 523(a)(2)(A) may consist of any "deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another[.]" *First Centennial Title Co. v. Bailey (In re Bailey)*, 216 B.R. 619, 621 (Bankr. S.D.Ohio 1997). As well, its existence can be shown when something is "done or omitted with the design of perpetrating what is known to be a cheat or deception." *Id*. The mere breach of a promise to pay, however, does not establish the existence of fraud. Instead, where there is a promise to perform a future act, fraud will only exist when coupled with a present intent not to perform. *Buchholz v. Cook (In re Cook)*, 263 B.R. 249, 257 (Bankr. N.D. Iowa 2001).

An intent to defraud under § 523(a)(2)(A) is determined under a subjective standard, requiring the plaintiff to show that the debtor did not actually intend to perform those obligations promised. *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). Whether a debtor intends to perform as promised is a factually intensive inquiry and, since a debtor will rarely admit to acting in a fraudulent manner, circumstantial evidence will often be needed to determine if the debtor acted with the requisite intent. *Weeber v. Boyd (In Re Boyd)*, 322 B.R. 318, 324 (Bankr. N.D.Ohio 2004). In assessing the available evidence, the Sixth Circuit has held that "factor-counting" is inappropriate and that what "courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." *In re Rembert*, 141 F.3d at 282.

In this matter, the Plaintiff, as evidence of the Defendant's intent to defraud, relies heavily on the Defendant's banking records. (Doc. No. 36). These records, consisting of banking statements and cancelled checks negotiated by the Defendant, reveal these facts.[1] Between January 2007 and July of 2007, the Defendant deposited into a checking account the sum of $214,675.66. This sum

---

[1] (Doc. No. 36, 37 & 38, Ex. J to OOO).

Page 5

Tonya R. Wilhelm v. Michael Alan Finnegan
Case No. 08-3341

is inclusive and fully accounts for the $136,000.00 in consideration extended by the Plaintiff to the Defendant. Over this same period of time, the Defendant made withdrawals from the account totaling $203,677.40.

A subjective intent to deceive may logically be inferred from a false representation which the debtor knows or should know will induce another to make a loan (or otherwise part with property or services). *Beverly Enterprises v. Eversole (In re Eversole)*, 110 B.R. 318, 324 (Bankr. S.D.Ohio 1990). Thus, when credit is extended for a specific purpose, a relevant indicator of fraudulent intent will concern whether a debtor uses the extension of credit for its intended purpose. *Matter of Pappas*, 661 F.2d 82, 86 (7th Cir. 1981) (debt held nondischargeable where it was not used for stated purpose); *In re Segala*, 133 B.R. 261, 264 (Bankr. D. Mass. 1991) (debt found nondischargeable where loans were used in required manner). *Compare In re Harrison*, 301 B.R. at 854 (In not finding fraud, this Court observed that the funds received were not primarily used for the debtor's direct personal benefit).

In this way, if the extension of credit is not used for its intended purpose, a strong inference arises that the debtor never intended to perform as promised. In fact, depending on the egregiousness of the misrepresentation, a debtor's failure to utilize funds extended on credit for its stated purpose may be dispositive on the issue of the debtor's fraudulent intent. This is the situation in this matter, with the Court finding the Defendant's actions to be particularly egregious.

Over the course of approximately six months, the Defendant expended more than $200,000.00. Yet, over this same time, when the Plaintiff's loans are subtracted, the Defendant only deposited into his checking account about $89,000.00. It, thus, follows that the Defendant's expenditures for the time period of January through July of 2007 were largely dependent on the $136,000.00 in consideration provided by the Plaintiff.

Page 6

Tonya R. Wilhelm v. Michael Alan Finnegan
Case No. 08-3341

Yet, for the time period in question, the Defendant was unable to produce a single piece of evidence, nor was the Defendant able to call this Court's attention to any particular expenditure, tending to show that the funds held in his checking account were utilized for the purpose of the Parties' agreement – that of rehabilitating properties. Instead, although it is not practicable to list each expenditure, it is apparent that the Defendant largely utilized the funds in his checking account to pay for an extensive array of personal expenses, including outlays for luxury items as services. For example, from January through July of 2007, funds from the Defendant's checking account were put to the following use: (1) personal mortgage payments; (2) car payments, including that for a Cadillac, for the Defendant and his wife; (3) professional sporting events; (4) country club dues; (5) golfing fees; (6) payments to friends; (7) cable television; and (8) educational expenses for a child of the Defendant.

In defense of his actions, the Defendant put forth that by investing with him, the Plaintiff assumed the risk of a loss. In the Defendant's words, the Plaintiff "understood when funds were transferred between us there was risk involved." (Doc. No. 35, at pg. 2). The Defendant then goes on to state, the Plaintiff "knew the risks she was taking. I'm guilty of one thing – being a poor businessman. I lost everything, family, friends, all my possessions." *Id.*

The weakness with the Defendant's argument, however, is apparent. When investing, a person, while undoubtably assuming the risk that the investment will decline in value, does not assume the risk that the invested funds will be used for purposes unrelated to the investment. As such, the Plaintiff, while she may have assumed the risk that her investment in real estate would not ultimately prove to be profitable, did not assume the risk that the Defendant would fraudulently divert the funds she invested for his personal use. In this way, the Defendant's *modus operandi* albeit much smaller in scope, bears a striking resemblance to the disgraced financier, Bernie Madoff,

Page 7

Tonya R. Wilhelm v. Michael Alan Finnegan
Case No. 08-3341

who bilked investors out of billions of dollars, diverting the sums for the benefit of himself, his family and his close personal friends.[2]

Notwithstanding, the Defendant's assumption of the risk argument does have some relevancy on the remaining issue before the Court: whether it was appropriate for the Plaintiff, as required under the forth element necessary to sustain a cause of action under § 523(a)(2)(A), to rely on the Defendant's misrepresentations. Under the common law, and thus by extension § 523(a)(2)(A), a duty is imposed upon a person to be diligent in safeguarding their interests; a person who is not diligent is deemed to have assumed the risk, and precluded from maintaining an action for fraud. 37 C.J.S. *Fraud* § 50 (2009).

In this matter, the degree of diligence exercised by the Plaintiff was anything but extensive. When inquired by the Court, the Plaintiff admitted that she never examined the Defendant's financial records; nor did she look at the public records to determine if the Defendant maintained an interest in the properties. The Plaintiff also acknowledged that, during the course of lending money to the Defendant, she only conducted cursory examinations of some of the investment properties. Yet, when all things are considered, the Court is persuaded that the Plaintiff's cursory examinations are sufficient to sustain an action for nondischargeability under § 523(a)(2)(A).

Applying the common law, the United States Supreme Court in *Field v. Mans* held that the standard of reliance needed under § 523(a)(2)(A) is that of justifiable, as opposed to the higher standard of reasonable reliance. 516 U.S. 59, 74-75, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995).

---

[2] http://www.reuters.com/article/idUSN061120090506. On June 29, 2009, Bernie Madoff was sentenced to 150 years in prison, the maximum allowed, after pleading guilty to 11 felonies, including securities fraud, investment advisor fraud and money laundering. http://en.wikipedia.org/wiki/Bernard_Madoff

Page 8

The difference between the two standards is that the former is subjective, whereas the latter standard is objective. In *Eugene Parks Law Corporation Defined Benefit Pension Plan v. Kirsh (In re Kirsh)*, which was favorably cited by the Supreme Court in *Field v. Mans*, the Ninth Circuit Court of Appeals explained justifiable reliance as this:

> the standard is not that of the average reasonable person. It is a more subjective standard which takes into account the knowledge and relationship of the parties themselves. Thus, a person of normal intelligence, experience and education may not put faith in representations which any such normal person would recognize at once as preposterous. At the same time, the standard does protect the ignorant, the gullible, and the dimwitted, for no rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool. On the other hand, if a person does have special knowledge, experience and competence he may not be permitted to rely on representations that an ordinary person would properly accept. In other words, while reasonableness of behavior is a factor in the mix, it is only a factor. The more precise question is whether the person who claims to have been gulled was justified in relying.

973 F.2d 1454, 1459 (9th Cir. 1992) (internal citations and quotations omitted).

In this matter, while her reliance may not have been reasonable, what makes the Plaintiff's reliance justifiable is the nature of her relationship with the Defendant prior to the time the Parties commenced their business endeavor. In particular, through their respective occupations, the Plaintiff and the Defendant had come to know each other, during which time they had the opportunity to build up a rapport. The transactions between the Parties, thus, cannot be considered completely at arms' length, thereby lessening the degree of diligence necessary for the Plaintiff to establish that she justifiably relied on the Defendant's misrepresentations.

For all these reasons, the Court finds that the Plaintiff has sustained her burden of establishing that her prepetition extension of credit to the Defendant constitutes a nondischargeable debt for purposes of 11 U.S.C. § 523(a)(2)(A). A monetary judgment for the amount of $136,000.00,

Tonya R. Wilhelm v. Michael Alan Finnegan
Case No. 08-3341

plus interest, will also be entered. *See Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965-66 (6th Cir. 1993) (recognizing power of bankruptcy court to enter a monetary judgment). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, pursuant to 11 U.S.C. § 523(a)(2)(A), any and all claims held by the Plaintiff, Tonya R. Wilhelm, against the Defendant, Michael Alan Finnegan, are hereby determined to be NONDISCHARGEABLE DEBTS.

**IT IS FURTHER ORDERED** that the Plaintiff, Tonya R. Wilhelm, is hereby awarded judgment against the Defendant, Michael Alan Finnegan, in the amount of $136,000.00. Post judgment interest shall accrue as provided in 28 U.S.C. § 1961.

**IT IS FURTHER ORDERED** that, pursuant to Bankruptcy Rule 9021, the Clerk, United States Bankruptcy Court, shall issue a separate judgment entry in accordance with the above order.

Dated: March 8, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 10

# CERTIFICATE OF SERVICE

Copies were mailed this 8th day of March, 2010 to:

Michael Alan Finnegan
11011 Market St
Birmingham, OH 44816

Tonya R. Wilhelm
240 Monroe St.
Monroeville, OH 44847

Patricia A Kovacs
500 Madison Ave, #525
Toledo, OH 43604

/s/Diana Hernandez
Deputy Clerk, U.S. Bankruptcy Court